(No. 71612.—

THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, v. LAWRENCE STEFAN, Appellant.

*Opinion filed January 23, 1992.*

Mary Robinson, of Robinson & Skelnik, of Elgin, for appellant.

Roland W. Burris, Attorney General, of Springfield (Rosalyn Kaplan, Solicitor General, and Terence M. Madsen and Douglas K. Smith, Assistant Attorneys General, of counsel), for the People.

JUSTICE FREEMAN delivered the opinion of the court:

On November 6, 1986, a Du Page County grand jury returned a 12-count indictment charging defendant, Lawrence Stefan (Stefan), and L & S Industries, Inc.,

with violations of the Environmental Protection Act (the Act) (Ill. Rev. Stat. 1985, ch. 111½, par. 1001 *èt seq.*) for criminal disposal of hazardous wastes, reckless disposal of hazardous wastes, and unauthorized use of hazardous wastes within the Village of Addison, Illinois. Stefan moved to dismiss counts I, IV, VII, and X of the indictment on the ground that prosecution on those counts was barred by the constitutional protection against double jeopardy because Stefan previously had been convicted of the same offenses under the municipal ordinance of the Village of Addison (Addison Village Code §23.13). Counts VII and X of the indictment, which were directed against L & S Industries, Inc., the corporation of which Stefan was the president, were dismissed because the corporation was involuntarily dissolved prior to the return of the indictment. However, the trial court denied Stefan's motion to dismiss counts I and IV of the indictment. Stefan appealed the denial of the motion to dismiss on jeopardy grounds by filing an interlocutory appeal to the appellate court (134 Ill. 2d R. 604(f)). The appellate court affirmed the trial court's ruling on the motion (208 Ill. App. 3d 205). We granted Stefan's petition for leave to appeal (134 Ill. 2d R. 315). We reverse.

## FACTS

Counts I and IV of the indictment charge Stefan with criminal disposal (count I) and reckless disposal (count IV) of hazardous wastes into the Village of Addison sanitary sewer system between January 1, 1984, and January 1, 1985, in violation of sections 44(c) and (f) of the Act. Specifically, counts I and IV allege:

Count I: "[B]etween January 1, 1984 and January 1, 1985, at and within Du Page County, Illinois, LAWRENCE STEFAN committed the offense of Criminal Disposal of Hazardous Waste in that said defendant, without lawful justification, knowingly disposed of hazardous

waste, in that said defendant disposed of hazardous waste, by depositing said hazardous waste into the Village of Addison sanitary sewer system, in violation of [section 44(c)]."

Count IV: "[B]etween January 1, 1984 and January 1, 1985, at and within Du Page County, Illinois, LAWRENCE STEFAN committed the offense of Reckless Disposal of Hazardous Waste in that said defendant disposed of hazardous waste and his acts which caused the hazardous waste to be disposed, were performed with a conscious disregard of a substantial and justifiable risk that such disposing of hazardous waste was a gross deviation from the standard of care which a reasonable person would exercise in the situation, in that said defendant deposited hazardous waste into the Village of Addison sanitary sewer system, in violation of [section 44(f)(1)]."

Sections 44(c) and (f)(1) of the Act provide, in pertinent part:

"(c) Criminal Disposal of Hazardous Waste.

(1) A person commits the offense of Criminal Disposal of Hazardous Waste when, without lawful justification, he knowingly disposes of hazardous waste.

\* \* \*

(f) Reckless Disposal of Hazardous Waste.

(1) A person commits Reckless Disposal of Hazardous Waste if he disposes of hazardous waste, and his acts which cause the hazardous waste to be disposed of, whether or not those acts are undertaken pursuant to or under color of any permit or license, are performed with a conscious disregard of a substantial and justifiable risk that such disposing of hazardous waste is a gross deviation from the standard of care which a reasonable person would exercise in the situation." Ill. Rev. Stat. 1985, ch. 111½, pars. 1044(c), (f)(1).

Stefan filed a request for a bill of particulars directed to the State (Ill. Rev. Stat. 1985, ch. 38, par. 111—6), requesting that the State specify the dates of the alleged violations for each count of the indictment and identify the hazardous wastes alleged in each count. The State

responded by filing a bill of particulars, stating with regard to the dates of the offenses that "the offenses constitut[ed] a repeated and continuous course of conduct on the part of each defendant." As to the types of hazardous wastes alleged, the State's bill of particulars asserted that the hazardous wastes were of the types referred to in several sections of the Illinois Administrative Code cited by the State (35 Ill. Adm. Code §721.122 *et seq.* (1985)).

The State then filed, pursuant to court order, an amended bill of particulars. With regard to counts I and IV, the amended bill of particulars reiterates that the dates of the offenses were between January 1, 1984, and January 1, 1985. Further, the amended bill states that the offenses "constitute[ ] a repeated and continuous course of conduct on the part of the defendant between the dates indicated." As to the type of hazardous waste alleged in count I, the amended bill of particulars states that the waste meets the definitions in one or more of the following sections of the Illinois Administrative Code: section 21.123(a)(5), characteristic of reactivity; section 721.124(a), characteristic of "EP toxicity" due to the presence of cadmium exceeding more than 1 milligram per liter, and/or chromium exceeding 5 milligrams per liter; and section 721.131, hazardous wastes from nonspecific sources. 35 Ill. Adm. Code §§721.123(a)(5), 721.124(a), 721.131 (1985).

As to count IV, the amended bill of particulars states that the hazardous waste alleged meets the definitions of one or more of the following sections of the Administrative Code: section 721.122(1), characteristics of corrosivity; section 721.123(a)(5), cyanide-bearing waste with characteristics of reactivity; section 721.124(a), cadmium and chromium waste listed by virtue of characteristics of "EP toxicity"; section 721.131, hazardous wastes from

nonspecific sources. 35 Ill. Adm. Code §§721.122(1), 721.123(a)(5), 721.124(a), 721.131 (1985).

Stefan moved to strike the State's amended bill of particulars on the grounds that the amended bill was not specific enough with regard to the dates of the offenses and the types of hazardous wastes alleged, and that the amended bill did not sufficiently limit the dates and types of wastes alleged. The trial court denied Stefan's motion to strike. Stefan then filed the motion to dismiss certain counts of the indictment, the denial of which is the subject of this appeal.

The prior prosecutions under the municipal ordinance of the Village of Addison, which Stefan alleges bar the prosecution by the State, were brought in two sets. The first set of six complaints was brought on February 8, 1984. Each of the six complaints named L & S Industries, Larry Stefan, president, as defendants. The complaints alleged that defendants knowingly discharged into the public sewer system the following materials on the following dates: (1) on January 27 and 30, 1984, a waste containing cyanide in amounts greater than allowed under the Village of Addison ordinance; (2) on January 31 and February 1, 1984, wastes containing excessive amounts of cyanide, cadmium, zinc, and chromium; (3) on February 2, 1984, a waste containing excessive amounts of cyanide; and (4) on February 3, 1984, a waste containing excessive amounts of cadmium and zinc. On May 2, 1984, upon the defendants' plea of guilty to the violations charged, the trial court entered an order imposing a fine of $3,000 plus $804.94 in fees and costs upon the defendants.

The second set of ordinance violation complaints was brought on July 11, 1984, against L & S Industries, Larry Stefan, president. This set of three complaints alleged that defendants knowingly discharged into the public sewer system on April 17, May 30, and May 31,

1984, wastes containing cadmium, chromium, cyanide, and zinc in amounts greater than allowed under the Village of Addison ordinance.

On February 13, 1985, an agreed order was entered, setting forth a finding that L & S Industries, Inc., violated the village ordinance by discharging, into the public sewer system, wastes containing excessive levels of prohibited chemicals. The order directs that L & S Industries, Inc., and Stefan shall no longer, as of the date of the order, engage in the business of metal plating in the Village of Addison.

All nine of the ordinance violation complaints cite section 23.13 of the Village of Addison ordinance, which provides, in pertinent part:

"No person shall discharge or cause to be discharged the following described substances, materials, waters or wastes to any public sewers:
***

(b) Any waters or wastes containing toxic or poisonous solids, liquids or gases in sufficient quantity, either singly or by interaction with other wastes, to injure or interfere with any sewage treatment process, constitute a hazard to humans or animals, create any hazard in the receiving waters of the sewage treatment plant, or to cause the effluent from the treatment works to violate applicable effluent standards.

* * *

No person shall discharge or cause to be discharged the following described substances, materials, waters or wastes to any public sewers if it appears likely in the opinion of the superintendent that such wastes can harm either the sewers, sewage treatment process, or equipment, have an adverse effect on the receiving stream or otherwise endanger life, limb, public property or constitute a nuisance. *** The substances prohibited *** are:

* * *

(5) Any waters or wastes containing iron, chromium, copper, zinc and similar objectionable or toxic substances

beyond the maximum allowable concentrations as determined by the Village of Addison." Addison Village Code §23.13.

The Village of Addison published a list of maximum allowable objectionable wastes which may be discharged into the sanitary sewer system. The list indicates the maximum amounts of zinc as 5 milligrams per liter; cyanide as "[n]o detectable amount, or as outlined in Section 23.13"; cadmium. as 0.25 milligrams per liter; and "chromium, hexavalent" as 1 milligram per liter, and "chromium, trivalent" as 5 milligrams per liter.

## DISCUSSION

### I. "Same Offence" for Double Jeopardy Purposes

On appeal, Stefan asserts that the appellate court erroneously relied upon the test set forth in *Blockburger v. United States* (1932), 284 U.S. 299, 76 L. Ed. 306, 52 S. Ct. 180, for determining whether a subsequent prosecution is barred under the double jeopardy clause of the fifth amendment (U.S. Const., amend. V). In addition, Stefan asserts that the appellate court failed to follow the recent case of *Grady v. Corbin* (1990), 495 U.S. 508, 109 L. Ed. 2d 548, 110 S. Ct. 2084, which constituted controlling authority from the United States Supreme Court as to the proper analysis for a double jeopardy claim. Stefan contends that the appellate court's continuing reliance upon *People v. Jackson* (1987), 118 Ill. 2d 179, which this court decided prior to the Supreme Court's issuance of *Corbin*, leaves the law in Illinois unclear, because *Jackson* is, at least in part, inconsistent with *Corbin*.

The issue for our determination is whether Stefan's offense of knowingly discharging certain chemicals into the public sewer system in violation of the Addison ordinance and the charged offenses of criminal disposal and

reckless disposal of hazardous wastes into the Addison sewer system in violation of the Act constitute the same offense for double jeopardy purposes.

The fifth amendment to the United States Constitution protects persons from being twice placed in jeopardy for the same offense. The fifth amendment provides, in pertinent part:

"[N]or shall any person be subject for the same offence to be twice put in jeopardy of life or limb." (U.S. Const., amend. V.)

The double jeopardy clause of the Federal Constitution applies to the States through the due process clause of the fourteenth amendment. (*Benton v. Maryland* (1969), 395 U.S. 784, 23 L. Ed. 2d 707, 89 S. Ct. 2056.) Although the Federal provisions are controlling, the Illinois Constitution of 1970 also provides a double jeopardy guarantee. Article I, section 10, of the Illinois Constitution provides:

"No person shall *** be twice put in jeopardy for the same offense." Ill. Const. 1970, art. I, §10.

The double jeopardy principle has its origins in common law. As stated in *Green v. United States* (1957), 355 U.S. 184, 2 L. Ed. 2d 199, 78 S. Ct. 221, the common law prohibited not only a second punishment for the same offense, but also a second trial for the same offense, " 'whether the accused had suffered punishment or not, and whether in the former trial he had been acquitted or convicted.' " (*Green*, 355 U.S. at 187, 2 L. Ed. 2d at 204, 78 S. Ct. at 223, quoting *Ex parte Lange* (1874), 85 U.S. (18 Wall.) 163, 169, 21 L. Ed. 872, 877.) The Court in *Green* further noted that the double jeopardy protection has as its basis the idea that:

"[T]he State with all its resources and power should not be allowed to make repeated attempts to convict an individual for an alleged offense, thereby subjecting him to embarrassment, expense and ordeal and compelling him

to live in a continuing state of anxiety and insecurity, as well as enhancing the possibility that even though innocent he may be found guilty." (*Green*, 355 U.S. at 187-88, 2 L. Ed. 2d at 204, 78 S. Ct. at 223.)

The constitutional guarantee against double jeopardy affords separate protections against three things: (1) a second prosecution after acquittal; (2) a second prosecution after conviction; and (3) multiple punishments for the same offense. *Illinois v. Vitale* (1980), 447 U.S. 410, 415, 65 L. Ed. 2d 228, 235, 100 S. Ct. 2260, 2264.

The test for determining whether two offenses are the same for double jeopardy purposes has been set forth in *Blockburger v. United States* (1932), 284 U.S. 299, 304, 76 L. Ed. 306, 309, 52 S. Ct. 180, 182:

"[W]here the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of an additional fact which the other does not."

As the Court stated in *Brown v. Ohio* (1977), 432 U.S. 161, 53 L. Ed. 2d 187, 97 S. Ct. 2221, the *Blockburger* test emphasizes the elements of the two crimes which are compared.

Recently, however, the Supreme Court in *Grady v. Corbin* (1990), 495 U.S. 508, 109 L. Ed. 2d 548, 110 S. Ct. 2084, stated that the *Blockburger* test does not provide sufficient protection for defendants from the burden of multiple trials. (*Corbin*, 495 U.S. at 520, 109 L. Ed. 2d at 564, 110 S. Ct. at 2093.) The Court in *Corbin* held that the *Blockburger* test provides only the initial analysis for double jeopardy purposes. *Corbin* stated:

"[T]he Double Jeopardy Clause bars any subsequent prosecution in which the government, to establish an essential element of an offense charged in that prosecution, will prove conduct that constitutes an offense for which the defendant has already been prosecuted. This is not an 'actual evidence' or 'same evidence' test. The critical in-

quiry is what conduct the State will prove, not the evidence the State will use to prove that conduct." (*Corbin*, 495 U.S. at 521, 109 L. Ed. 2d at 564, 110 S. Ct. at 2093.)

Thus, the *Corbin* test focuses on the conduct which the State will prove, rather than the elements of the offenses.

The Court in *Corbin* reiterated its statement in *Brown v. Ohio* (1977), 432 U.S. 161, 53 L. Ed. 2d 187, 97 S. Ct. 2221, that *Blockburger* does not provide the only double jeopardy test. Rather, as *Brown* stated:

> "Even if two offenses are sufficiently different to permit the imposition of consecutive sentences, successive prosecutions will be barred in some circumstances where the second prosecution requires the relitigation of factual issues already resolved by the first." (*Brown*, 432 U.S. at 166 n.6, 53 L. Ed. 2d at 195 n.6, 97 S. Ct. at 2226 n.6.)

*Corbin* also cites the two earlier cases of *Ashe v. Swenson* (1970), 397 U.S. 436, 25 L. Ed. 2d 469, 90 S. Ct. 1189, and *In re Nielsen* (1889), 131 U.S. 176, 33 L. Ed. 118, 9 S. Ct. 672, as examples where the double jeopardy clause barred subsequent prosecutions, even though application of the *Blockburger* test would have allowed multiple prosecutions. *Corbin*, 495 U.S. at 519, 109 L. Ed. 2d at 563, 110 S. Ct. at 2092.

In *Corbin*, the defendant's automobile crossed the median on a highway and struck two oncoming vehicles. As a result, one person was killed and another injured. The defendant was issued two traffic citations, one for driving while intoxicated and another for failing to keep right of the median. Three days later, an assistant District Attorney began investigating the accident for a homicide prosecution. However, the assistant District Attorneys who appeared in court on the traffic case were not aware of the death. Nor was the trial judge who presided over the traffic case aware of the death. The

defendant pleaded guilty to the traffic offenses and was sentenced and fined. *Corbin*, 495 U.S. at 510-13, 109 L. Ed. 2d at 557-59, 110 S. Ct. at 2087-89.

Two months later, an indictment was issued charging the defendant with reckless manslaughter, criminally negligent homicide, third-degree reckless assault, and driving while intoxicated. The prosecution filed a bill of particulars, stating that it would rely upon conduct for which the defendant had already been convicted in the traffic case—driving while intoxicated and failing to keep right of the median—to prove the homicide and assault charges. (*Corbin*, 495 U.S. at 513-14, 109 L. Ed. 2d at 559, 110 S. Ct. at 2089.) Because the same conduct would be proved in the second trial, the Court held that the successive prosecution was barred. *Corbin*, 495 U.S. at 523, 109 L. Ed. 2d at 565-66, 110 S. Ct. at 2094.

In the instant case, Stefan asserts that the appellate court improperly relied upon the analysis in *People v. Jackson* (1987), 118 Ill. 2d 179, which held that offenses are the same for double jeopardy purposes only if they meet the *Blockburger* test—that is, where one of the offenses is wholly included within the other, or if one offense represents a species of lesser-included offenses as recognized in *Harris v. Oklahoma* (1977), 433 U.S. 682, 53 L. Ed. 2d 1054, 97 S. Ct. 2912.

Stefan notes that in applying *Jackson*, the appellate court concluded that the ordinance violations and the statutory offenses in the instant case were not the same for double jeopardy purposes because each offense required proof of a fact that the other did not. The appellate court held that the offenses charged in the indictment required proof of a mental state—knowledge for count I, and recklessness for count IV—whereas the Addison ordinance offenses did not include any mental state and constituted absolute liability offenses. The appellate court also stated that the ordinance violations re-

quired proof that the hazardous wastes be discharged into a public sewer, whereas under the Environmental Protection Act, the discharge of wastes could occur other than to public sewers.

We agree with Stefan that the appellate court's analysis in this case demonstrates the result which may occur on these facts from an application of the *Blockburger* analysis, without the benefit of *Corbin*. However, in view of *Corbin*, we must go beyond the *Blockburger* test to determine whether Stefan is being afforded constitutional double jeopardy protections.

In response to Stefan's argument, the State asserts that the *Corbin* decision merely renders the appellate court's decision in the instant case incomplete. We note that the appellate court opinion in the instant case was filed on February 5, 1991, after the *Corbin* opinion was issued. The State argues, however, that because this court may affirm the appellate court on any ground which appears of record (*People v. Sloan* (1986), 111 Ill. 2d 517, 522), this court may affirm the appellate court's decision based on the other arguments presented by the State. Alternatively, the State asserts, this court should remand the case to the appellate or trial court for consideration of issues not fully addressed.

We disagree with the State that a remand in the instant case is necessary. Further, we hold that insofar as the double jeopardy analysis set forth in *Jackson* is inconsistent with *Corbin*, *Corbin* has overruled the *Jackson* analysis as the proper double jeopardy test. *Jackson* relied principally upon the *Blockburger* analysis. *Jackson*, however, also took into account the Supreme Court's holdings in *Harris v. Oklahoma* (1977), 433 U.S. 682, 53 L. Ed. 2d 1054, 97 S. Ct. 2912, *Brown v. Ohio* (1977), 432 U.S. 161, 53 L. Ed. 2d 187, 97 S. Ct. 2221, *In re Nielsen* (1889), 131 U.S. 176, 33 L. Ed. 118, 9 S. Ct. 672, and *Illinois v. Vitale* (1980), 447 U.S. 410, 65

L. Ed. 2d 228, 100 S. Ct. 2260. *Jackson* set forth the double jeopardy analysis as a two-part test. First, a court was to determine if the statutory elements for the two offenses were the same. If not, then the court would determine whether either of the offenses was a lesser-included offense of the other. *Jackson* relied upon *Blockburger*, *Harris*, *Brown*, and *Nielsen* for the two-part test.

*Jackson*'s interpretation of a portion of *Vitale*, however, has effectively been overruled by *Corbin*. *Jackson* stated that certain *dicta* in *Vitale* "appears to be inconsistent with, or at least to qualify, the holding of [*Vitale*]." (*Jackson*, 118 Ill. 2d at 184.) *Vitale* involved facts similar to *Corbin*. In *Vitale*, the defendant was convicted of the traffic offense of failing to reduce speed to avoid an accident. Subsequently, the defendant was charged with involuntary manslaughter based on his reckless driving. The Court held that the second prosecution was not barred under the *Blockburger* analysis. However, the Court remanded the case for further analysis regarding the statutory offenses and a determination of which acts the State would rely upon to prove manslaughter. *Vitale*, 447 U.S. at 421, 65 L. Ed. 2d at 238-39, 100 S. Ct. at 2267-68.

The *Vitale* language which *Jackson* found inconsistent with the Court's holding provides that if in the pending prosecution in *Vitale*, the State would rely upon and prove a failure to reduce speed to avoid an accident as the reckless act necessary to prove manslaughter, then the defendant could raise a double jeopardy claim. (*Jackson*, 118 Ill. 2d at 184, citing *Vitale*, 447 U.S. at 419-20, 65 L. Ed. 2d at 237-38, 100 S. Ct. at 2267.) This court in *Jackson* noted that this *dicta* from *Vitale* had not been cited by the Supreme Court in any cases subsequent to *Vitale*, and stated that the language apparently was inconsistent with the Court's decisions before and

after *Vitale*. (*Jackson*, 118 Ill. 2d at 184-85.) After *Jackson* was issued, however, the Supreme Court in *Corbin* made clear that the *Vitale* analysis was consistent with *Brown, Nielsen*, and *Harris*, and constituted a "same conduct" test. (*Corbin*, 495 U.S. at 521-22, 109 L. Ed. 2d at 564-65, 110 S. Ct. at 2093.) Accordingly, insofar as *Jackson* found that *Vitale* was inconsistent with other Supreme Court precedent, or that the cited *dicta* was inconsistent with the *Vitale* holding and the proper double jeopardy analysis, *Jackson* is overruled.

Stefan asserts that application of the analysis set forth in *Corbin* to the facts of the instant case will result in a finding that the State's prosecution for criminal disposal and reckless disposal of hazardous waste is barred. The State responds that, even under the *Corbin* analysis, its indictment and bill of particulars do not charge the "same conduct" at issue in the ordinance violation actions. We note, however, that at oral argument before this court, the State conceded that where the dates of the indictment and the ordinance violation complaints overlap, for instance, on January 27, 1984, the "same conduct" is alleged for double jeopardy purposes.

In its brief, the State asserts that *Corbin* rejected a "single transaction" view of the double jeopardy clause, and that, under *Corbin*, the State may seek to convict a defendant for certain conduct even where the conduct occurred simultaneously with the conduct for which the defendant already has been convicted. (*Corbin*, 495 U.S. at 523 n.15, 109 L. Ed. 2d at 566 n.15, 110 S. Ct. at 2094 n.15.) The State also asserts that *Garrett v. United States* (1985), 471 U.S. 773, 85 L. Ed. 2d 764, 105 S. Ct. 2407, holds that the double jeopardy clause does not bar prosecution for a continuing criminal enterprise where the defendant already had been tried and convicted of one of the predicate offenses. Alternatively, the State asserts that this court should remand the case to the ap-

pellate court for further consideration of this issue, or remand the case to the circuit court with a mandate that the circuit court order the State to amend the bill of particulars to exclude the specific dates or chemicals referenced in the ordinance violation complaints.

We reject the State's contention that a remand is necessary. Further, we find that the nature of the conduct and offenses charged in *Garrett* is distinguishable from that in the instant case. In *Garrett*, the defendant had engaged in an extensive marijuana importation and distribution operation, involving his attending meetings and making telephone calls in several States, including Arkansas, Florida, Georgia, Louisiana, Massachusetts, Michigan, Texas, and Washington. The defendant pleaded guilty to importation of marijuana in an action brought in Washington. Subsequently, the defendant was indicted in Florida under a Federal drug-abuse prevention statute for a "continuing criminal enterprise" violation. *Garrett*, 471 U.S. at 775-76, 85 L. Ed. 2d at 769-70, 105 S. Ct. at 2409-10.

The "continuing criminal enterprise" offense in *Garrett* required proof that the defendant had committed a felony that was part of a series of three or more violations of the statute over a definite period of time with a substantially similar purpose. Further, a conviction would require a finding that the defendant acted in concert with five or more other persons; that the defendant acted in a supervisory position in the criminal operation; and that the defendant received substantial income from the operation. *Garrett*, 471 U.S. at 776, 85 L. Ed. 2d at 770, 105 S. Ct. at 2410.

The Court in *Garrett* stated that the fact that one of the three predicate offenses was committed during the five-year time period did not necessarily lead to the conclusion that the defendant would then have committed the other two requisite offenses. (*Garrett*, 471 U.S. at

788-89, 85 L. Ed. 2d at 777-78, 105 S. Ct. at 2416.) The Court stated that the conduct charged was "multilayered" as to time and place. Under such circumstances, the Court held that the double jeopardy clause did not bar the later prosecution. *Garrett*, 471 U.S. at 792-93, 85 L. Ed. 2d at 780-81, 105 S. Ct. at 2418-19.

The Court noted that the conduct charged was not comparable to a single course of conduct, such as stealing a car and "joyriding," as were charged in *Brown v. Ohio* (1977), 432 U.S. 161, 53 L. Ed. 2d 187, 97 S. Ct. 2221. By contrast to *Garrett*, in *Brown*, "Every moment of [defendant's] conduct was as relevant to the joyriding charge as it was to the auto theft charge." *Garrett*, 471 U.S. at 787, 85 L. Ed. 2d at 777, 105 S. Ct. at 2416.

Similarly, the offenses in the instant case, unlike *Garrett*, do not involve "multilayered" conduct as to time and place. It appears that Stefan's conduct of discharging hazardous wastes in 1984 is as relevant to the Addison ordinance offenses as it is to the indictment charges. Further, the State's amended bill of particulars does not distinguish any of the alleged conduct from the conduct which formed the basis for the ordinance convictions. The amended bill of particulars characterizes the conduct charged in the indictment as "a repeated and continuous course of conduct" by Stefan. However, as Stefan points out, that the conduct charged is continuous conduct over several dates does not preclude a double jeopardy bar. See *Brown*, 432 U.S. 161, 53 L. Ed. 2d 187, 97 S. Ct. 2221; *In re Nielsen* (1889), 131 U.S. 176, 33 L. Ed. 118, 9 S. Ct. 672.

Under the *Corbin* analysis, the conduct for which the State is prosecuting Stefan is the same conduct for which Stefan was convicted in the ordinance violation cases. The indictment charges the criminal disposal and reckless disposal of hazardous wastes into the Village

of Addison sewer system between January 1, 1984, and January 1, 1985. The hazardous wastes which allegedly were disposed were cyanide, cadmium, and chromium. The ordinance violation actions convicted Stefan of knowingly discharging cyanide, cadmium, zinc, and chromium into the public sewer system on specific dates in January, February, April, and May 1984. The State's amended bill of particulars failed to specify chemicals other than those already included in the ordinance prosecutions. Further, the amended bill does not specify dates between January 1, 1984, and January 1, 1985, on which Stefan allegedly discharged hazardous wastes, to distinguish the time of the conduct alleged in the State's action from the time of the conduct of which Stefan was convicted in the ordinance violation actions.

As *Corbin* noted:

> "All nine federal Circuits which have addressed the issue have held that 'when a defendant puts double jeopardy in issue with a non-frivolous showing that an indictment charges him with an offense for which he was formerly placed in jeopardy, the burden shifts to the government to establish that there were in fact two separate offenses.'" (*Corbin*, 495 U.S. at 522 n.14, 109 L. Ed. 2d at 565 n.14, 110 S. Ct. at 2094 n.14, quoting *United States v. Ragins* (4th Cir. 1988), 840 F.2d 1184, 1192.)

The State in the instant case has made no such showing that the offenses charged are separate from those already prosecuted. Accordingly, the State's prosecution on counts I and IV of the complaint are barred by the double jeopardy clause.

## II. Meaningful Opportunity to Participate

We also address two other issues which the parties raise. The State asserts that *Corbin* may be inapplica-

ble to the instant case because the record is insufficient to show whether the State's Attorney was or could have been present for the ordinance violation cases prosecuted by the Village of Addison. The State cites *People v. Raebig* (1991), 213 Ill. App. 3d 146, in which the appellate court distinguished *Corbin*'s double jeopardy bar where the State prosecutor was deprived of a meaningful opportunity to participate in the initial proceeding. The State asserts that if this court agrees with *Raebig*, this court should remand the instant case for a more complete determination of whether the State's Attorney had a meaningful opportunity to participate in the initial prosecution.

Stefan counters that *Raebig* stands for the proposition that the appropriate prosecuting official, as opposed to the arresting officer, must have a meaningful opportunity to decide upon the charge to be brought and to take part in the prosecution of that charge before the prosecution will be barred by the double jeopardy guarantee from pursuing other charges. (*Raebig*, 213 Ill. App. 3d at 149-50.) Stefan asserts that *Raebig* does not support the State's assertion that a remand is necessary.

We agree. In *Raebig*, the arresting officer issued traffic citations to the defendant for failure to yield at a stop sign and to wear a seat belt. The officer noted that the traffic accident had resulted in a fatality, but he failed to check the box on the citations requiring a court appearance, and the defendant signed the guilty pleas on the citations and mailed them with the required fines to the circuit court clerk's office. Defendant later was indicted for reckless homicide based on the same conduct charged by the traffic tickets. Defendant moved to dismiss the indictment on double jeopardy grounds, and the trial court granted the motion. (*Raebig*, 213 Ill. App. 3d at 148.) The appellate

court reversed, holding that because the officer's failure to properly mark the citations to require defendant to appear in court deprived the State's Attorney of the opportunity to participate in the prosecution, the subsequent prosecution for reckless homicide was not barred by the double jeopardy clause. *Raebig*, 213 Ill. App. 3d at 149-50.

*Raebig* does not apply to the facts of the instant case, where there is no assertion that a prosecutor was not provided the opportunity to participate in the prosecution of the initial ordinance violation charges. Further, as noted by Stefan, the United States Supreme Court held in *Waller v. Florida* (1970), 397 U.S. 387, 25 L. Ed. 2d 435, 90 S. Ct. 1184, and this court reiterated in *People v. Allison* (1970), 46 Ill. 2d 147, that for double jeopardy purposes, a municipality and a State constitute the same sovereign. Therefore, a conviction or acquittal entered in a municipal ordinance prosecution bars a later prosecution by the State's Attorney for violation of a State statute based upon the same conduct. (*Waller*, 397 U.S. at 394-95, 25 L. Ed. 2d at 440-41, 90 S. Ct. at 1188-89; *Allison*, 46 Ill. 2d at 149.) Accordingly, we reject the State's argument that because it did not prosecute the initial charges, the double jeopardy clause does not bar prosecution under the indictment.

### III. Defendant's Being Personally in Jeopardy

In addition, the State contends that Stefan was not personally in jeopardy during the Village of Addison proceedings. Stefan counters that he *was* personally in jeopardy. We set forth the State's arguments first. The State asserts that only the corporation, L & S Industries, Inc., and not defendant personally, was a party to the ordinance violation actions. Rather, Stefan appeared only in his capacity as president of L & S In-

dustries, Inc. Accordingly, the State argues, there is no double jeopardy bar to the State's action against Stefan in the instant case. The State's argument was raised in the appellate court but was not addressed by that court.

The State asserts that the captions and wording of the documents in the Village of Addison actions show that the defendant was being named only in his capacity as a representative of the corporation and not personally. For instance, the State asserts that it was L & S Industries, Inc., which pleaded guilty to the ordinance violations and was fined in May 1984. In addition, it was L & S Industries, Inc., which, on February 13, 1985, entered into an agreed order regarding the second set of ordinance violation actions. The State contends that the agreed order does not operate to bar the State's later prosecutions because the agreed order is similar to a consent decree under which the parties merely recite the agreement they have reached. Further, because there was no trial in the instant case, jeopardy would attach only if the defendant entered a guilty plea, which Stefan did not do in the second set of ordinance violation actions. The State cites *People v. McCutcheon* (1977), 68 Ill. 2d 101, in support of this last argument.

Stefan first replies that *McCutcheon* is distinguishable from the instant case. Stefan asserts that *McCutcheon* holds that where the defendant entered a guilty plea which later was vacated, the defendant was not in jeopardy as to the charges and later could be prosecuted on the charges. Stefan also notes that *Corbin* involved an initial judgment entered pursuant to a guilty plea. Stefan contends that a judgment entered after a guilty plea or stipulated finding of guilt are enforceable to the same extent as a judgment following a trial, and is binding for double jeopardy purposes.

We agree. In *McCutcheon*, the court made a distinction between a guilty plea and a jury verdict for double jeopardy purposes within a certain context. The court stated that a finding of guilt by a trier of fact on a lesser charge is presumptively a finding of not guilty on the greater offense because the trier of fact had the opportunity to find the defendant guilty of the greater offense. However, where the defendant pleads guilty to the lesser offense, there is no verdict on the greater offense. (*McCutcheon*, 68 Ill. 2d at 105-06.) In the instant case, there is no assertion that Stefan pleaded guilty to a lesser offense than that charged in the ordinance violation actions and that now the State is charging him with the greater offense for which no verdict was rendered. Rather, Stefan was adjudged guilty and punished for the conduct charged in each of the Village of Addison complaints. We reject the State's argument regarding *McCutcheon*.

Further, Stefan replies that he was personally at jeopardy in the ordinance prosecutions. Stefan asserts that the complaints themselves, in addition to the manner in which the Village of Addison sought to bring him before the court, show that Stefan himself was a defendant in those actions. Initially, Stefan notes that the ordinance violation complaints identify the defendant on the complaint form as "L & S Industries—Mr. Larry Stefan, Pres." The second set of ordinance violation complaints and all but one of the first set of complaints also had a check mark in the box on each complaint form identifying defendant as a "male." Further, a notice to appear directed to Larry Stefan was issued for each complaint in both sets of prosecutions.

In addition, Stefan asserts that no summons was issued or served upon the corporation, L & S Industries, Inc., in the first set of ordinance violation actions. The

only service was upon Larry Stefan individually, by a separate notice to appear issued for each of the complaints. In the second set of complaints, both the corporation and Larry Stefan individually were served— the corporation via summons, and Larry Stefan by way of notices to appear.

Further, Stefan points out that he was the only defendant properly served in the first set of ordinance cases; and no order was entered dismissing him from the action before the adjudication of guilt and imposition of fines. Further, the final order entered in the second set of ordinance violation actions explicitly names Lawrence Stefan, in addition to the corporation, as a party subject to the penalty imposed. The order states, in part, that "L & S INDUSTRIES, INC., an Illinois Corporation or any successor organization, LAWRENCE J. STEFAN, individually and any other corporation or business entity which he may control or be a majority shareholder in, shall not hereafter engage in the business of metal plating within the confines of the Village of Addison, State of Illinois."

We agree with Stefan that he was a party to the ordinance violation actions who was personally subjected to punishment as a result of the final orders in those actions. Accordingly, we hold that double jeopardy bars the State's prosecution on the basis that Stefan already was put in jeopardy for the same offense.

For the foregoing reasons, the judgments of the appellate court and circuit court are reversed.

*Judgments reversed.*