THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. EDWARD FAIRCLOTH, Defendant-Appellant.

Third District    No. 3—90—0435

Opinion filed September 10, 1992.

Josette Skelnik, of Law Offices of Josette Skelnik, of Elgin (Michael Kalland, of counsel), for appellant.

Edward Burmila, Jr., State's Attorney, of Joliet (John X. Breslin and Rita Kennedy Mertel, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE STOUDER delivered the opinion of the court:

Following a jury trial, the defendant, Edward Ray Faircloth, was convicted of delivery of a controlled substance (Ill. Rev. Stat. 1989, ch. 56½, par. 1401), possession with intent to deliver a controlled substance (Ill. Rev. Stat. 1989, ch. 56½, par. 1401), and drug-induced homicide (Ill. Rev. Stat. 1989, ch. 38, par. 9—3.3). The defendant was sentenced to consecutive sentences of 30 years for drug-induced homicide, 15 years for delivery of a controlled substance and 15 years for possession with intent to deliver a controlled substance.

Defendant raises three issues on appeal: (1) whether the trial court erred by refusing to submit a jury instruction regarding the of-

fense of involuntary manslaughter (Ill. Rev. Stat. 1989, ch. 38, par. 9—3); (2) whether the trial court improperly admitted into evidence certain letters written by the defendant without laying a proper foundation; and (3) whether the defendant was denied effective assistance of counsel.

On September 13, 1989, a paramedic with the Romeoville fire department, Valerie Bubica, responded to a call at 625 Glen Street. According to the caller, there was a young person suffering convulsions, having difficulty in breathing, and bleeding from the mouth. Bubica arrived on the scene and found the defendant sitting on the floor and supporting the limp body of Sandra Parise. Bubica concluded that Parise was in cardiac arrest. Bubica called for assistance and, noticing what appeared to be fresh needle marks on Parise's arms, she also called the police. Parise was transported to the hospital and died soon after. The doctor who performed the autopsy testified that Parise died from the adverse effects of cocaine.

The State's principal witness at trial was Marie Gilbert. Gilbert was a friend of both the defendant and Sandra Parise. Gilbert testified that on September 11, 1989, she went to Pete Millette's house to obtain cocaine. Millette gave Gilbert one-half gram of cocaine in return for her having sex with him. While she was at Millette's house, the defendant showed up there to purchase cocaine. Gilbert was hiding in the bathroom at the time but recognized the defendant by his voice. Millette told Gilbert that he had "fronted" half a gram of cocaine to the defendant. Under this arrangement, the defendant would pay for the cocaine later.

Later that day, Gilbert joined the defendant and Sandy Parise at the house at 625 Glen Street. This house belonged to the defendant's sister, Robin Oxendine, and her husband. The three of them used up all of the cocaine by Sunday evening and decided to obtain more from Pete Millette. Gilbert believed that the defendant was going to steal the cocaine. Gilbert and Parise waited down the block while the defendant went to Millette's house. When they heard the sound of glass breaking, they began walking toward Millette's house. The defendant soon appeared from the direction of Millette's backyard with a rock of cocaine in his pants. Gilbert believed the rock weighed approximately two ounces. After the three of them arrived back at Oxendine's house, the defendant began injecting himself and the two girls with the cocaine. They had approximately six to seven injections apiece. The next day, September 12, Parise and Gilbert went to Gilbert's house to prepare some of the cocaine to be sold. While doing so, they each snorted some of the cocaine.

On September 13, the defendant again got together with Parise and Gilbert to take more cocaine. This time the three of them met at the Oxendines' trailer on the lake. After receiving two injections from the defendant, Parise began to snort cocaine. When the defendant's brother-in-law, Tom Oxendine, ordered them to leave the trailer, they went back to the house on Glen Street. The three of them took a brief detour, stopping at a baseball field to take more cocaine. When they eventually arrived back at the Glen Street house at approximately 10 p.m. they again began to take cocaine. Gilbert eventually decided she did not want any more cocaine and went to sleep. Robin Oxendine woke Gilbert up at approximately 5 a.m. to tell her that Parise was having a seizure. Gilbert found the defendant holding Parise's convulsing body. The defendant told Gilbert not to tell Robin Oxendine what was wrong with Parise.

At the time of Parise's death, Gilbert told the police that the cocaine belonged to the defendant. Her statement to the police was generally consistent with her testimony at trial. However, she did not mention to the police that she believed the defendant broke into Millette's house, and she also did not inform them that she had also obtained cocaine from Millette.

While the defendant was in prison awaiting trial he engaged in a mutual correspondence with Gilbert. They each wrote each other many times and also had a few telephone conversations. During the phone conversations and in the letters, the two of them discussed the possibility of Gilbert changing her statement to the police. The defendant wanted Gilbert to tell the police that the cocaine in fact belonged to Parise. The defendant even went so far as to draft a letter he wanted Gilbert to send to the judge. The letter stated that her original statement to the police was a lie, that the cocaine in fact belonged to Parise, and that the defendant was not to blame for Parise's death. Gilbert agreed in her letters to go along with the story that the cocaine belonged to Parise. She told this changed story to an investigator from the public defender's office. At trial, Gilbert went back to her original story, stating that she did not want to go to prison for lying.

The defendant argues that it was error for the trial court to refuse his requested jury instruction on the offense of involuntary manslaughter. When a defendant is charged with a single offense, he can only be convicted of an offense that was not charged if it is a lesser included offense of the one charged. (*People v. Schmidt* (1988), 126 Ill. 2d 179, 533 N.E.2d 898.) Therefore, a jury instruction on involuntary manslaughter would only be appropriate if involuntary man-

slaughter is a lesser included offense of drug-induced homicide. An included offense is defined by statute as follows:

" 'Included offense' means an offense which
  (a) Is established by proof of the same or less than all of the facts or a less culpable mental state (or both), than that which is required to establish the commission of the offense charged, or
  (b) Consists of an attempt to commit the offense charged or an offense included therein." (Ill. Rev. Stat. 1989, ch. 38, par. 2—9.)

Drug-induced homicide and involuntary manslaughter are defined as follows:

"A person who violates subsection (a) or subsection (b) of Section 401 of the Illinois Controlled Substances Act by unlawfully delivering a controlled substance to another, and any person dies as a result of the injection, inhalation or ingestion of any amount of that controlled substance, commits the offense of drug induced homicide." Ill. Rev. Stat. 1989, ch. 38, par. 9—3.3.

"A person who unintentionally kills an individual without lawful justification commits involuntary manslaughter if his acts whether lawful or unlawful which cause the death are such as are likely to cause death or great bodily harm to some individual, and he performs them recklessly ***." Ill. Rev. Stat. 1989, ch. 38, par. 9—3.

In the recent case *People v. Jones* (1992), 149 Ill. 2d 288, the Illinois Supreme Court, relying on its decision in *People v. Bryant* (1986), 113 Ill. 2d 497, 499 N.E.2d 413, stated that the proper test to be used in determining whether one offense is a lesser included offense of another is whether the charging instrument, together with the evidence introduced at trial, sets out the main outline of the lesser offense. The charging instrument does not need to expressly allege every element of the lesser offense, but the lesser offense does need to have a broad foundation in the instrument charging the greater offense. (*People v. Bryant* (1986), 113 Ill. 2d 497, 499 N.E.2d 413.) In the instant case, the charging instrument does not set out the main outline of involuntary manslaughter. Although it is not required that the charging instrument set out every element of the lesser offense, the indictment in this case does not set out *any* element of the lesser offense. The indictment in this case, on the charge of drug-induced homicide, charged that the defendant "knowingly and unlawfully delivered a substance containing Cocaine [*sic*] to Sandra A.

Parise other than as authorized by the Illinois Controlled Substances Act, Chapter 56½, Section 1401, and as a result of said delivery Sandra A. Parise died from the injection of said cocaine."

■ The elements of involuntary manslaughter are an unintentional killing and reckless performance of an act that causes the victim's death. The cause of Sandra Parise's death was the adverse effects of cocaine. The indictment did not charge the defendant with administering the cocaine to Parise or with acting recklessly. Therefore, the indictment did not set out the main outline of the offense of involuntary manslaughter. The drug-induced homicide statute is a unique statute that imposes criminal responsibility for the death of a person on anyone in the chain of delivery of controlled substances that were the cause of that person's death. The indictment in this case charged the defendant with making such a delivery and that Sandra Parise died from taking those substances. The mental state in this statute is "knowingly," which comes from section 401 of the Controlled Substances Act of 1971 (Ill. Rev. Stat. 1989, ch. 56½, par. 1401), which prohibits a knowing manufacture, possession, or delivery of a controlled substance. The defendant just needs to make a knowing delivery of a controlled substance, and if any person then dies as a result of taking that substance, the defendant is responsible for that person's death. That is all that the indictment in this case charged. In the instant case, the indictment charging the defendant with drug-induced homicide did not sufficiently allege the conduct and mental state required for involuntary manslaughter. Therefore, the circuit court was correct in denying the defendant's proffered jury instruction.

The defendant claims that the test for a lesser included offense is that established by the Supreme Court in *Grady v. Corbin* (1990), 495 U.S. 508, 109 L. Ed. 2d 548, 110 S. Ct. 2084, and followed by the Illinois Supreme Court in *People v. Stefan* (1992), 146 Ill. 2d 324, 586 N.E.2d 1239. That test looks at whether the government will seek to prove conduct that constitutes an offense for which the defendant has already been prosecuted. The defendant's reliance on these cases is misplaced. *Grady* and *Stefan* state the proper test to be used in determining whether offenses are the same for *double jeopardy purposes*. The Illinois Supreme Court's decisions in *Schmidt* and *Jones* state the proper rule for when an instruction on an offense not charged needs to be given to the jury.

The defendant also argues that the trial court erred in admitting into evidence the letters written by the defendant while he was in prison. According to the defendant the letters were not properly au-

thenticated because Marie Gilbert did not recognize the defendant's handwriting. Prior to receiving the letters, Gilbert had not seen the defendant write anything. Nevertheless, proof of handwriting is not necessary to properly authenticate a private letter; such authentication may be made by circumstantial evidence. *People v. Munoz* (1979), 70 Ill. App. 3d 76, 388 N.E.2d 133.

■ In the instant case, the circumstantial evidence that the defendant was the author of the letters was overwhelming: the letters bore the return address of the Will County jail; many of the letters were in response to letters written by Gilbert; the letters were signed "Love, Ray" (the name defendant went by); the letters discussed many subjects that only the defendant knew about, including details of the night Parise died; and the defendant discussed the contents of the letters with Marie Gilbert on the phone. Similar circumstantial evidence was held to be sufficient for authentication in *Munoz* and also in *People v. Buford* (1982), 110 Ill. App. 3d 46, 441 N.E.2d 1235.

The defendant claims that the correct rule for authentication of private writings is the rule established by the Illinois Supreme Court in *Putnam v. Wadley* (1866), 40 Ill. 346. The defendant's reliance on that case is misplaced. *Putnam* dealt with the question of proof of signatures on commercial paper, not with proof of authorship of private letters. Based on the decision in *Munoz*, we find that the circuit court correctly admitted the letters into evidence.

Further, the defendant claims that he received ineffective assistance of counsel, in that defense counsel erred in failing to request a jury instruction that Marie Gilbert's prior inconsistent statements could be used as substantive evidence. According to the defendant, this error was compounded when counsel himself instructed the jury that Gilbert's statements could only be used for impeachment purposes. The standard for measuring ineffective assistance of counsel claims was established by the Supreme Court in *Strickland v. Washington* (1984), 466 U.S. 668, 80 L. Ed. 2d 674, 104 S. Ct. 2052; the defendant must show that (1) counsel's performance was so seriously deficient as to fall below an objective standard of reasonableness under prevailing professional norms and (2) that the deficient performance so prejudiced the defense as to deny a fair trial. It is often easier to dispose of an ineffectiveness claim based on the second prong of the test—lack of prejudice—and counsel's performance need not be evaluated if it can be shown that the defendant suffered no prejudice. *People v. Albanese* (1984), 104 Ill. 2d 504, 473 N.E.2d 1246.

A witness' prior inconsistent statement may be used as substantive evidence as well as for impeachment purposes (Ill. Rev. Stat.

1989, ch. 38, par. 115—10.1). Failure to make use of the statute allowing prior inconsistent statements to be used as substantive evidence can be a basis of a claim for ineffective assistance of counsel. (*People v. Wilson* (1986), 149 Ill. App. 3d 1075, 501 N.E.2d 863.) However, counsel's decision not to use a witness' prior statement substantively may be a reasonable strategic decision. (*People v. Steidl* (1991), 142 Ill. 2d 204, 568 N.E.2d 837.) Also, counsel does not have to seek a jury instruction that counsel reasonably believes the jury would not believe. *People v. King* (1991), 218 Ill. App. 3d 248, 578 N.E.2d 217.

The defendant in this case relies most heavily on *People v. Wilson* (1986), 149 Ill. App. 3d 1075, 501 N.E.2d 863, a case in which the defendant was granted a new trial because defense counsel failed to utilize the statute allowing a prior inconsistent statement to be used as substantive evidence. In that case, a woman who was the victim of a purse snatching originally stated that after the defendant grabbed her purse he fired a shot at her over his left shoulder, without looking back, with a gun he held in his right hand. At trial the victim testified that the defendant held the gun in his left hand, looked back, and fired over his right shoulder. The court in that case found that if the jury would have been allowed to consider the first statement as substantive evidence, a jury instruction on reckless conduct would have been appropriate. Because the prior inconsistent statement did not come in substantively, no instruction on reckless conduct was given and the defendant was found guilty of attempted murder. The court found that counsel's failure to use the statements as substantive evidence deprived the defendant of an essential element of his defense.

In deciding an ineffectiveness claim, a court must consider the totality of the evidence before the jury. (*Wilson*, 149 Ill. App. 3d 1075, 501 N.E.2d 863.) In this case, unlike the *Wilson* case, there was overwhelming evidence that Gilbert's prior inconsistent statements were made at the defendant's behest. The defendant wrote Gilbert numerous letters asking her to change her original statement to the police, and also drafted a letter for her to send to the judge in the case saying that her original statement was a lie. Gilbert stated at trial that she agreed to the changed story for a while because she wanted to run away with the defendant. She testified at trial that she would not continue to give the defendant's version of the events because she did not want to go to prison for lying.

■ Considering the totality of the evidence before the jury, we do not believe that the defendant suffered prejudice as a result of defense counsel's failure to use Gilbert's prior statements as substantive evidence. The statements did come in for impeachment purposes, so

the jury would have been entitled to disbelieve Gilbert's testimony. Also, because the evidence was so overwhelming that the inconsistent statements were made at the defendant's behest, we do not believe that the result at trial would have been any different if the jury would have been allowed to consider those statements substantively. Therefore, we hold that the defendant suffered no prejudice. Because of this finding, it is unnecessary for us to decide whether or not defense counsel's performance was actually deficient.

We could find no other cases in this jurisdiction involving the drug-induced homicide statute, and no issue was raised by the parties as to the validity of that statute.

For all of the above reasons, the decision of the circuit court of Will County is affirmed.

Affirmed.

McCUSKEY and HAASE, JJ., concur.